NATIONAL LABOR RELATIONS BOARD
v. NATIONAL MINERAL CO.
No. 8144.

Circuit Court of Appeals, Seventh Circuit.
March 8, 1943.

Rehearing Denied April 20, 1943.

Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and Edward J. Cresswell, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Adolph A. Rubinson, of Chicago, Ill., for respondent.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The National Labor Relations Board, hereinafter referred to as the Board, has filed a petition for enforcement of its order against the National Mineral Company, hereinafter referred to as the company.

The Board found the company guilty of three unfair labor practices, in violation of Sections 8(1), 8(3) and 8(5) of the National Labor Relations Act, hereinafter referred to as the Act. (49 Stat. 449, 29 U.S.C.A. § 158.) The Board ordered the company to cease and desist from interfering with, restraining and coercing its employees in the exercise of their right of self-organization guaranteed by Section 7 of the Act; to cease and desist from discouraging membership in the union (Chrome Furniture, Handlers and Miscellaneous Crafts Union No. 658) by discriminating in regard to the hire and tenure of employment; to cease and desist from refusing to bargain collectively with the union; to offer one Albert Labiak immediate and full reinstatement to his former or a substantially equivalent position, without prejudice to his seniority or other rights and privileges, and to make him whole for any loss he may have suffered; and to post the usual notices.

As to the unfair labor practices of interfering with, restraining and coercing its employees in violation of Section 8(1) of the Act, and discrimination in the hire and tenure of employment of Albert Labiak in violation of Section 8(3) of the Act, the company neither in its brief nor in the oral argument challenged these findings or the order of the Board relating thereto. Where the Board in its petition and brief in support thereof presents a prima facie case for enforcement of its order, which is not challenged or disputed in the company's brief or on oral argument, the company will be deemed to have admitted the validity of so much of the findings and the order relating thereto as remain undisputed and unchallenged by the company. See 4 Corpus Juris Secundum, Appeal and Error, § 1344.

Suffice it to say, we have examined the record and find there is substantial evi-

Frank Donner, Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen.

426

dence to support the Board's order that the company was guilty of unfair labor practices in violation of Sections 8(1) and 8(3) of the Act. It would serve no useful purpose to encumber the record with an analysis of the evidence in support thereof, which, as we have said, was not even challenged by the company.

The company does make a challenge of the Board's finding of violation of Section 8(5) of the Act, by attacking the validity of the proceeding before the Board in a Section 9(c) proceeding,[1] in which the Board conducted a hearing, an investigation and an election to determine the bargaining agent of the company's employees. The Board found after the hearing and the investigation in that proceeding that an election should be held to determine the bargaining agent. An election was held, and as a result of the election, the Chrome Furniture, Handlers and Miscellaneous Crafts Union No. 658, affiliated with the Upholsterers' International Union of North America, affiliated with the American Federation of Labor, hereinafter refered to as the union, was designated as the bargaining agent for the company's eligible employees. Since this was the bargaining agent that the Board found the company had refused to bargain with, in violation of Section 8(5) of the Act, the record of the Section 9(c) proceedings was certified to this court as required by Section 9(d) of the Act.[2]

Although it is admitted that the Board certified the union as the bargaining agent for the company's employees after a Section 9(c) proceeding, the company has refused to recognize the union or to bargain with it. The company states its refusal to bargain with the union is because there can be no question of representation under the Act or the Constitution since, it is asserted, the union did not represent the employees, and only 83 out of the 453 eligible employees voted at an election held by the Board.

The investigation and election authorized in the aid thereof under Section 9(c) of the Act are administrative proceedings. They are not adversary proceedings, and, as counsel for the company admits in his brief, "The employer is only a nominal party. The issue at the preliminary hearing in these cases arises between the employees themselves, as can be seen more clearly when two unions are seeking and claiming sole representation. The function of the Board and the employer, therefore, in these hearings is merely to develop the facts relating to the right of the single claimant to speak for all the employees. The only persons directly affected by the Board's finding that there is a majority are the employees who have not authorized the union to speak for them."

It is the agent of the employees that is being chosen, and not the agent of the employer. The employees have raised no question as to the proceedings in which their representative was selected. One would naturally expect the employer, unless prejudicially disposed towards unions, to be indifferent to the question of who is to be chosen to represent the employees. As the Circuit Court of Appeals for the Fifth Circuit said in National Labor Relations Board v. Whittier Mills Co., 111 F.2d 474-478: "The employer is, in theory at least, not much concerned, since the employees are to choose their representative unhindered. So long as the employees make no contention that they are not correctly represented, it would seem that the employer could safely continue to deal indefinitely with the designated bargaining agent. In the present case the employees have not protested at all, and the employer has raised the question belatedly."

The employer's interest and his great concern about whom the employees shall have as their representative for bargaining purposes are easily demonstrated as very unsubstantial. Suppose the stockholders of the respondent company or any corporation were holding a stockholders' meeting for the purpose of electing the bargaining

---

[1] 29 U.S.C.A. § 159(c).

[2] Section 9(d) of the Act provides: "Whenever an order of the Board made pursuant to section 10(c) [section 160(c) of this title] is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section, and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsections 10(e) or (f) [subsections 160(e) or 160(f) of this title], and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript."

representative of the stockholders, namely, the directors; and suppose fraud, forgery and sharp dealing of many kinds were used in the procurement and handling of the stockholders' proxies in such an election. Would the employer be likely to tolerate the protest of its employees, who were not stockholders, that the election was crooked and invalid? In what forum in this land of ample legal machinery could the employees be heard to challenge the election of the stockholders' representative for collective bargaining? This reverse statement of the case shows how ephemeral and unsubstantial the employer's objection is. As the Senate Committee on Education and Labor that reported the bill for passage said with reference to a Section 9(c) proceeding (Senate Report No. 573, 74th Congress, 1st Session): "An election is the mere determination of a preliminary fact, and in itself has no substantial effect upon the rights of either employers or employees."

The employer may only challenge to our attention what the record reveals in order that we may determine whether the Board followed the proceedings laid down in Section 9(c), and whether there was substantial evidence to support its action. We look to the record. There we find that the company was largely engaged in interstate commerce. The facts as to this were stipulated. On March 19, 1940, the Beauticians Supplies and Cosmetic Workers Union Local 21107, affiliated with the American Federation of Labor, filed with the Board a petition for an investigation and certification, pursuant to Section 9(c) of the Act. Prior thereto, Local 21107 had applied to the Upholsterers' International for affiliation with it. On March 25, 1940, the Upholsterers' Union issued a charter to the Chrome Furniture, Handlers and Miscellaneous Crafts Union Local No. 658, herein referred to as the union. Local 21107 then surrendered its charter, and the union claimed to succeed it and to represent the employees of the company. On April 29, 1940, the union filed a petition with the Board for an investigation and certification under Section 9(c) of the Act. On May 15, 1940 the Regional Director issued notices of a hearing and served the notices on the company, with a copy of the petition. The company appeared at the hearing represented by counsel, and participated therein. During the course of that proceeding, the company stipulated: "* * * that the union for which the cards have been signed has a sufficient interest in the matter to bring the case before the Examiner."

The Board found upon investigation and hearing that the company's employees had signed 288 cards or papers of various kinds indicating their desire to be represented by a union. The company further stipulated during the hearing that the union was the only labor organization at the time claiming to represent the employees. It seemed to be the contention of the company that the union could not claim to represent the employees who had signed up with Local 21107, which had surrendered its charter. The same International Union that Local 21107 sought affiliation with issued its charter to the union Local No. 658, and Local 21107 then surrendered its charter. These acts occurred contemporaneously. There was evidence that 288 of the company's employees out of a possible 453 were interested in some union representation. Local No. 658, which claimed to succeed Local 21107, claimed the right to represent the employees, and was the only labor union that did. There was here a showing of substantial interest among the employees in union representation, the presence of a union that claimed to represent the employees, and the admission of the interstate character of the company's business. This was ample to warrant the Board in taking the next step.

The Board found that there was a question of representation of the company's employees affecting or likely to affect interstate commerce, and that the hourly paid production employees in the company's Chicago plant, excluding certain categories, were an appropriate unit for bargaining purposes. In order to determine whether the union that claimed to represent the employees did in fact represent them, the Board on July 2, 1940, ordered an election for July 23, 1940. On the ballot only one question was submitted, namely, Did the employees want the union (naming it) as their collective bargaining agent? The Board prior to the election sent 25 copies of the election notice to the company to be posted in its plant. The company refused to post them. The company had agreed to furnish a copy of the payroll for the guidance of the Board in conducting the election. This it failed and refused to do. On election day the supervisory officials, contrary to their usual habits, gathered at the plant entrance, only about forty-five feet from the polling place, and kept the em-

ployees under surveillance during the election. The Board agent who conducted the election protested to the officials, but they remained. On election day the company sought in the District Court to enjoin the election. Out of a possible 453 employees in the bargaining unit eligible to vote in the election, only 83 voted. Seventy-one voted for the union, 11 against, and 1 ballot was not counted. On this election the union was certified as the bargaining agent.

The company now says that because such a small number voted, the Board's certification of the union as the bargaining representative is an abuse of discretion and an unauthorized act.

The company is a flagrant violator of the provisions of the Act. Its prejudicial conduct was so apparent that it never attempted in its brief or on oral argument to defend its conduct. It refused to co-operate in the holding of the election by refusing to post the notices and by refusing to furnish the payroll for the Board's guidance. To show its complete hostility, after refusing to furnish the payroll to guide the Board, the company objected that the Board used the irregular method of taking an affidavit of the employee to substantiate his right to vote! Add to this the abortive injunction suit on election day and the surveillance of the voting place by the company's supervisory officials, and you have a totality of opposition by the company to the efforts of its employees to organize that warranted the Board in finding that the company's conduct was an interference with the election and was responsible for the small number voting. Such conduct we held the company responsible for in New York Handkerchief Mfg. Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 144–149: "In the instant case, as found by the Board, petitioner, by its unlawful conduct, interfered with the right of its employees to participate in the election and, no doubt, was responsible for the small proportion of its employees voting. Under such circumstances, we are of the opinion that the Board not only was within its authority, but was justified in concluding that the Union was the proper representative. To hold otherwise would place a premium upon the unlawful conduct of an employer and enable it to frustrate one of the major purposes of the Act—that is, the determination of a proper bargaining agent."

The election was properly ordered after a fair hearing. It was fairly and legally conducted, as certified by the company's appointed observers at the election. The unfair labor practices and the hostile, noncooperative attitude of the company may very properly account for the failure of many employees to vote. The employees' lack of interest, always a factor in every election, kept others from the polls. If they choose, without fear or intimidation, to stay away, they cannot complain that others have in effect exercised their franchise.[3] Certainly the company cannot be very persuasive in its objections, especially where it has been hostile, noncooperative and guilty of unfair labor practices, as the company was in the instant case.

The Section 9(c) proceedings held by the Board were fairly conducted in accordance with the statute, and the conclusions reached were fully warranted. Since the union was the duly certified bargaining agent, and the company persistently refused to bargain with it, there is no question but what the company is guilty of the violation of Section 8(5) of the Act, as found by the Board.

The company made a motion to dismiss the petition on the ground that the question was moot, because a change in the character of its business has rendered obsolete the unit found by the Board to be appropriate for the purpose of collective bargaining, and compliance with the Board's order is impossible.

The bargaining unit found and certified by the Board to be appropriate was and is, " * * * the hourly paid production employees of the Company at its Chicago plant, exclusive of office, maintenance, and sales employees, carpenters, firemen, engineers, foremen, and supervisors * * *." Prior to its motion in this court to dismiss the petition for enforcement, the company never at any time disputed the appropriateness of the unit found by the Board. It must be indisputable that the company still has "hourly paid production employees" outside of the categories excluded. Likewise, as far as this record shows, the union still claims to represent the employees of the bargaining unit. No employee or labor organization has disputed that fact. The employer will not be heard to object for the employees or the union on a matter so

---

[3] New York Handkerchief Mfg. Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 144–149; In re Todd, 208 Ind. 168, 189, 193 N.E. 865.

peculiarly vital to the employees and the union, where they do not object.

We must accept here the record as made by the Board, in the absence of a showing of extraordinary circumstances which prevented the presentation of the matter to the Board below. Such is the statute's mandate.[4] No extraordinary circumstances have been made to appear. It was alleged in the motion to dismiss that the company is now engaged in making some kind of defense material. This is no extraordinary circumstance. It is no extraordinary circumstance, or a circumstance of any consequence so far as the company is concerned, that the union that claims the right to represent the employees of the company may be claiming to represent employees not authorized by its charter. As we said before, the union is not objecting, neither are the employees, and the employer will not be heard to champion their cause. The case is not moot, and the motion to dismiss is denied.

The company has exhausted its tactics of opposition. It is at the end of the road. The order of the Board will be enforced, after striking out the words "successors and assigns" to conform to the prior holdings of this court.

[4] "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C.A. Section 160(e).