### No. 26631

**J. E. Losavio, Jr., District Attorney in and for the Tenth Judicial District of the State of Colorado v. District Court in and for the Tenth Judicial District, Honorable Matt J. Kikel, District Judge within and for the County of Pueblo, State of Colorado**

(533 P.2d 32)

Decided March 24, 1975.

128

J. E. Losavio, Jr., for petitioner.

Kettelkamp and Vento, P.C., Bollinger, Flick & Young, George M. Bollinger, for respondents.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The petitioner, J. E. Losavio, District Attorney in and for the Tenth Judicial District, filed a petition for a Writ of Prohibition against the District Court in and for the Tenth Judicial District and the Honorable Matt J. Kikel, the Chief Judge thereof, to enjoin the holding of a hearing on motions to quash grand jury subpoenas or in the alternative for protective orders. We issued a rule to show cause why the relief prayed for should not be granted. The respondents have answered and the matter is now at issue.

The issue here arose out of the following set of facts: Jay E. Flick and Tuck Young, duly licensed attorneys in Colorado, were subpoenaed to appear and testify before the 1974 Pueblo County Statutory Grand Jury on August 29, 1974. On the return day both attorneys filed separate motions to quash the subpoenas, "claiming that their testimony before the aforesaid grand jury would violate the attorney-client privilege." Alternatively, the motion asked for protective orders, alleging that their appearances before the grand jury would be observed and reported by the press and would cause damage to the attorney-client relationship and the administration of justice. This latter allegation was supported by a multi-page exhibit containing newspaper clippings tending to prove the charge.

In each of the motions filed by the subpoenaed witnesses it was alleged, *inter alia,*

"that upon information and belief and pursuant to the statements made by Joseph E. Losavio, Jr., District Attorney, . . . the purpose of subpoenaing the petitioner is to question him with regard to what arrangements were made to pay the legal expenses and services including meals and lodging for the petitioner and his client, Joe I. Torres, in Golden, Colorado, during the trial of his client in the *People of the State of Colorado v. Joe I. Torres,* in District Court in and for the County of Jefferson, State of Col-

orado'' [where it was tried by virtue of an order for change of venue].

The respondent judge on August 29, 1974, entered an order relieving both Flick and Young "from appearing and/or testifying before the Grand Jury," pursuant to the command of the subpoenas. The court further ordered that the motion to quash and the alternative motions for protective orders be heard on August 30, 1974. On August 30, 1974, the court continued the hearing to September 24, 1974, which, the district attorney alleged,

"further hindered, delayed and unduly interferred with the expeditious discharges of the Grand Jury's duties and its orderly proceedings."

The district attorney, as legal advisor to the grand jury, on August 30, 1974, moved the respondent to dismiss the motions to quash and the alternative motions for protective orders as premature. The motion was denied. The district attorney then asked for time in which to seek a writ of prohibition, which was denied. The court continued the hearing on the original petition until September 24, 1974. The petition here under consideration was then filed in this court.

As noted, we issued the rule to show cause and stayed further proceedings until the further order of this court. We now make the rule absolute.

The petitioner recognizes that the respondent court has "the jurisdiction, obligation and duty to supervise grand jury proceedings," but argues that the court acted prematurely in setting the hearing on Flick and Young's motions to quash before their appearance and interrogation by the grand jury. The petitioner contends that the district court is not sufficiently apprised of the nature of the grand jury investigation to make a determination that a recognized attorney-client privilege exists as to the subject of inquiry which would preclude the attorneys from appearing before the grand jury.

Petitioner asserts that Flick and Young should be first interrogated and that they should raise the question of privilege when specific questions call for answers which would infringe upon matters protected by the attorney-client privilege. As authority for this position, the petitioner cites *Blair v. United States,* 250

U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), and *Bursey v. United States,* 466 F.2d 1059 (9th Cir. 1972).

In *Blair* the court reviewed the history of compulsory process by grand juries and then held that:

"it is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the Government is bound to perform upon being properly summoned . . . . The personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public. The duty, so onerous at times, yet so necessary to the administration of justice according to the forms and modes established in our system of government (*Wilson v. United States,* 221 U.S. 361, 372, quoting Lord Ellenborough), is subject to mitigation in exceptional circumstances; there is a constitutional exemption from being compelled in any criminal case to be a witness against oneself, entitling the witness to be excused from answering anything that will tend to incriminate him (see *Brown v. Walker,* 161 U.S. 591); some confidential matters are shielded from considerations of policy, and perhaps in other cases for special reasons a witness may be excused from telling all that he knows.

"But, *aside from exceptions and qualifications* — and none such is asserted in the present case — *the witness is bound not only to attend but to tell what he knows in answer to questions framed for the purpose of bringing out the truth of the matter under inquiry.*" (Emphasis added.)

Thus the universal rule is that citizens generally are not immune from grand jury subpoenas. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Blackmer v. United States,* 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932). The duty to testify in judicial proceedings has long been recognized as a basic obligation that every citizen owes his government. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

On the other hand, the respondent, advancing the position of Flick and Young, contends that the grand jury subpoena power is not unlimited and that the trial court is obligated to hold a pre-appearance hearing to determine whether the privilege would be

violated by the grand jury. In the main, the respondent cites as authority *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1971) and *United States v. Judson,* 322 F.2d 460 (9th Cir. 1963).

At first blush it appears that we are confronted with two conflicting matters of public policy: first, that which holds that "the public has the right to every man's evidence, particularly in grand jury proceedings,"[1] and second, that arising out of the attorney-client privilege. Actually, the issue is more restricted. The true issue is whether the court may entertain the motions to quash or in the alternative, for protective orders prior to the witnesses' appearance, or must the issue of attorney-client privilege be raised at the time of interrogation before the grand jury when the questions seek to elicit information which the witness asserts is within the privilege.

 The purpose of the attorney-client privilege is to secure the orderly administration of justice by insuring candid and open discussion by the client to the attorney without fear of disclosure. *Fearnley v. Fearnley,* 44 Colo. 417, 98 P. 819 (1908); *Denver Tramway Co. v. Owens,* 20 Colo. 107, 36 P. 848 (1894). The roots of this time-honored privilege originated in the common law, and it is now codified in most jurisdictions. *Radin, The Privilege of Confidential Communication Between Lawyer and Client,* 16 Calif. L. Rev. 487 (1927). In this state, 13-90-107, C.R.S. 1973 provides:

"(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

. . . .

"(b) An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; . . . ."

 As defined by the legislature and courts of this state, the attorney-client privilege is personal with the client. *Mauro v.*

---

[1]*Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

*Tracey,* 152 Colo. 106, 380 P.2d 570 (1963); *Fearnley v. Fearnley, supra.* Hence, the privilege may be waived only by the client. *Hill v. Hill,* 106 Colo. 492, 107 P.2d 597 (1940); *C. McCormick, Evidence* § 93 (2d ed. 1972). The privilege is established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations. *Bernardi v. Community Hospital Assoc.,* 166 Colo. 280, 443 P.2d 708 (1968); *Denver Tramway Co. v. Owens, supra; see generally,* 8 *J. Wigmore, Evidence* (McNaughton rev. 1961) §§ 2294-323. In short, a communication said to be within the privilege must relate to the subject matter of the employment. Hence, communications which pertain only to the fact of an attorney's employment probably would not be privileged. *Goddard v. United States,* 131 F.2d 220 (5th Cir. 1942). Nor would·the client's communication to the attorney of a proposed infraction of the law come within the privilege. *United States v. Lee,* 107 F. 702 (E.D. N.Y. 1901); *see generally People ex rel. Vogelstein v. Warden,* 150 Misc. 714, 270 N.Y.S. 362 (1934).

The public policy expressed in the attorney-client privilege may, as it does here, come into conflict with other prevailing public policies. As stated by Justice Cardozo in *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1932), this demands our reconciliation:

"The recognition of a privilege does not mean that it is without conditions or exceptions. The social policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. It is then the function of a court to mediate between them, assigning, so far as possible, a proper value to each."

The public policy favoring the grand jury's elicitation of testimony has often been found to conflict with other claims of privileged communications. In each instance, the ruling court has been required to align the two policies. Frequently, the potential targets of grand juries' investigations have attempted to avoid appearing as witnesses at grand jury hearings on the basis of the privilege against self-incrimination. *e.g. United States v. Corallo,* 413 F.2d 1306 (2nd Cir. 1969); *Stanley v. United States,* 245

F.2d 427 (6th Cir. 1957). Uniformly, the competing policies have been adopted by requiring the witness to appear before the grand jury, at which time the Fifth Amendment privilege can be asserted in response to specific questions which would evoke incriminating answers. Similarly, in *Pitcher v. U.S. Attorney*, 199 F.Supp. 862 (E.D. La. 1961), it was concluded that a district attorney is not excluded from the duty to obey a properly issued subpoena, merely by reason of his official status and concomitant privileges. In seeking to strike a proper balance between the needs of the grand jury and the privilege declared, the court stated that "[w]hile appearing before the grand jury, pursuant to such a subpoena [the district attorney] may, of course, urge whatever privileges he may claim to have insofar as answering specific questions . . . ." The court went on to state that "[a]t that time it is for the court to decide whether or not such matters are privileged and beyond the reach of a subpoena." *See also United States v. Doe*, 332 F.Supp. 930 (D. Mass. 1971) (Senator's legislative privilege); *In re Goldman*, 331 F.Supp. 509 (W.D. Pa. 1971) (client seeking questions for attorney in advance of hearing).

*In re Kinoy*, 326 F.Supp. 400 (S.D. N.Y. 1970), is of particular relevance to the case at hand. Mr. Kinoy moved the court to quash a subpoena to appear before a grand jury on the basis of his client's First Amendment rights and the attorney-client privilege. As a preface to its discussion, the court noted that "with the rarest of possible exceptions, nobody is immune from such appearance whether or not particular questions put by the grand jury to the witness may give rise to valid claims of privilege." In denying the motion to quash the subpoena, the court stated:
"Lawyers, of all people, should be supposed competent to enforce in the grand jury room their legitimate duties of confidentiality. They are obliged at the same time, not less than others, to give their non-privileged knowledge to the grand jury."

These cases are representative of the manner in which the courts have resolved challenges, based on privilege, to the grand jury's subpoena power. In each case, the determinative factor was whether the privilege was intended to be all encompassing thereby precluding the possibility of any fruitful interrogation. As

discussed earlier, the attorney-client privilege only applies to communications which satisfy certain requisites of confidentiality and subject matter relatedness. Hence, to quash the grand jury's subpoena of a witness is to foreclose the grand jury from legitimately interrogating an attorney-witness on matters which quite possibly are not protected by the privilege. This is an impermissible curtailment of the grand jury's investigatory function.

We hold, therefore, that an attorney-witness must, except in the most exceptional of circumstances, honor a properly issued subpoena by appearing before the grand jury. It is then for the trial court to determine whether a specific interrogatory posed by the grand jury or the district attorney calls for an answer which falls within or without the privilege; or, whether the information sought to be elicited is so inextricably intertwined with confidential communications that if untangled, that which is not within the privilege would be meaningless without that which is privileged. In the latter event the privilege should also be respected. *See In re Verplank,* 329 F.Supp. 433 (C.D. Ca. 1971).

We note, paranthetically, that if the district attorney subpoenas the lawyers here to answer only questions which he knows or should know will require the attorney to assert the privilege, a serious question of ethics arises.

The rule is made absolute.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON concur in the result.