**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Oscar FRENCH, Defendant–Appellant.**

No. 03CA2477.

Colorado Court of Appeals, Div. III.

Nov. 3, 2005.

As Modified on Denial of Rehearing Dec. 22, 2005.

Certiorari Granted Sept. 11, 2006.*

---

* Justice EID does not participate.

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

CASEBOLT, J.

Defendant, Oscar French, appeals the judgment of conviction entered upon jury verdicts finding him guilty of reckless vehicular homicide and leaving the scene of an accident involving death, both class four felonies. Defendant also appeals the aggravated range sentence imposed upon his vehicular homicide conviction. We affirm.

While driving in a construction zone at a speed in excess of the posted limit, defendant hit the car traveling ahead of him, crossed into the opposite lane, and crashed head-on into an oncoming car. Defendant fled the scene of the accident on foot before police arrived. The driver of the oncoming car died, and the driver of the car ahead of defendant was seriously injured.

Following defendant's conviction, the trial court sentenced him to serve an aggravated term of twelve years in the custody of the Department of Corrections on the vehicular homicide count and six years on the hit-and-run count, to run concurrently. This appeal followed.

I. Continuance

Defendant first asserts the trial court deprived him of his right to a fair trial by denying his motion for a second continuance. We disagree.

The decision to grant or deny a motion for continuance is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *People v. Rodriguez*, 914 P.2d 230, 268 (Colo.1996); *People v. Gagnon*, 703 P.2d 661, 663 (Colo.App.1985). "To say that a court has discretion in resolving [an] issue means that it has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over the other." *People v. Crow*, 789 P.2d 1104, 1106 (Colo.1990)(quoting *People v. Milton*, 732 P.2d 1199, 1207 (Colo.1987)).

A defendant must demonstrate actual prejudice resulting from the denial of a continuance before it will be considered as a basis for reversal. *People v. Chambers*, 900 P.2d 1249, 1253 (Colo.App.1994); *People v. Denton*, 757 P.2d 637, 638 (Colo.App.1988).

Here, two weeks before his original trial date, defendant moved for a continuance, asserting the need to obtain expert witnesses. The trial court granted a continuance of three months. Defendant then retained a brain injury expert who was expected to testify that defendant received a head injury in the accident that so incapacitated him that he did not knowingly leave the accident scene. Defendant also retained an accident reconstruction expert to testify that he was not driving recklessly at the time of the accident and to respond to the prosecution's accident reconstruction expert.

One week before trial, defendant moved for a second continuance. The trial court denied the motion.

### A. Brain Injury Expert

We reject defendant's contention that the brain injury expert did not have enough time to complete his investigation and conduct a clinical interview. Defendant hired the expert at least two months before trial, and the clinical interview would have taken approximately two to three hours. While defendant asserted that this expert had unexpectedly been required to travel out of state, he did not explain why the testing this expert proposed could not have been completed before trial.

 Nor do we perceive any prejudice under these circumstances. The examination and testing this expert proposed to perform on defendant would have occurred eight months after the accident and thus would likely have been of marginal value.

Moreover, the witness testified at trial in general terms about the kind of impact necessary to cause a head injury and the kind of behavior expected from a person who suffered a closed head injury. Another witness provided evidence that defendant was suffering from some of those effects following the accident. Hence, defendant in fact introduced the kind of evidence he desired to present.

### B. Accident Reconstruction Expert

 We likewise reject the assertion that the accident reconstruction expert did not have sufficient time to complete his reconstruction. The expert had two full months

and was well aware of the trial date. Moreover, the expert testified at trial and was able to rebut the prosecution's expert effectively. Defendant offers no explanation of how any further tests or calculations would have added significantly to this expert's opinion.

Defendant nevertheless contends the prosecution violated Crim. P. 16 by failing timely to disclose its final accident reconstruction report and photos of the accident, which warranted the continuance. We disagree.

Here, the prosecution's disclosure of the final accident reconstruction report was untimely. However, previous versions had been provided to defendant well in advance of trial. And the prosecution made the photos available within a reasonable time after defendant requested them.

 In any event, even if we assume, without deciding, that the late disclosures violated Crim. P. 16, the result would be the same. Failure to comply with discovery rules constitutes reversible error only when a defendant can demonstrate prejudice, *Salazar v. People*, 870 P.2d 1215, 1220 (Colo. 1994), and none has been shown here.

To the extent defendant contends he was denied the ability to refute the prosecution's accident reconstruction report, we reject that contention also. At trial, defense counsel engaged the prosecution's accident reconstruction expert in a lengthy and detailed cross-examination. Defendant's own accident reconstruction expert also testified at length about the inadequacies of the police investigation and their accident reconstruction techniques.

Accordingly, we conclude the trial court did not abuse its discretion or abridge defendant's right to a fair trial in denying the motion for a second continuance.

### II. Victim's Background

Defendant next asserts the trial court erroneously admitted irrelevant evidence from the victim's husband about the victim's background. We agree, but conclude the error was harmless.

■ The determination of whether evidence is relevant lies within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *See People v. Saiz*, 32 P.3d 441, 446 (Colo.2001).

■ All evidence must meet the threshold standard of relevance. *See* CRE 402. Evidence is relevant when it has any tendency to make a fact of consequence more probable or less probable than it would be without the evidence. CRE 401; *People v. Madson*, 638 P.2d 18, 28 (Colo.1981).

■ Still, "[e]vidence that serves as background information about persons, subjects, or things in a trial is generally admissible although it may not relate to a consequential fact." J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 401.04[4][a], at 401–36 (2d ed.2005). However, background evidence must somehow assist the court in determining the probative value of other evidence that affects the probability of a fact of consequence. *See* Weinstein, *supra*, ¶ 401.04[4][a], at 401–36.

Here, the husband's testimony consisted entirely of background information, including that he and his wife had been married for twenty-five years and had five children together, and a few details about how he learned of the accident and his wife's death. The record does not reveal that any of the testimony was directly relevant to an issue in the case. Therefore, we do not perceive that this background evidence assisted the court or the jury in determining the probative value of other evidence that affected the probability of a fact of consequence. Hence, it was irrelevant.

■ Because defendant objected to the admission of this evidence, we must next determine whether the error is harmless. *See People v. Martinez*, 734 P.2d 650, 652 (Colo.App.1986). The proper inquiry in determining whether an error requires reversal is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Tevlin v. People*, 715 P.2d 338 (Colo.1986); *People v. Carlson*, 712 P.2d 1018 (Colo.1986).

■ Here, we fail to see how the error substantially influenced the verdict or affected the fairness of the trial. The testimony was brief, the prosecutor did not dwell on it in closing argument, and the trial court instructed the jury not to be swayed by sympathy or prejudice. *See People v. Martinez, supra*, 734 P.2d at 652 (harmless error to admit evidence that victim was pregnant); *State v. Wade*, 200 W.Va. 637, 490 S.E.2d 724, 739 (1997)(harmless error to admit evidence that victim had a twelve-year-old child). Accordingly, reversal is not warranted.

## III. Aggravated Range Sentence

Defendant next asserts the trial court deprived him of his Sixth Amendment and due process rights to a jury trial by impermissibly imposing an aggravated range sentence. We disagree.

■ Generally, a trial court has broad discretion in sentencing decisions, and its determination will not be overturned on appeal absent an abuse of discretion. *People v. Watkins*, 684 P.2d 234, 239 (Colo.1984); *Triggs v. People*, 197 Colo. 229, 231, 591 P.2d 1024, 1025 (1979). However, review of constitutional challenges to sentencing determinations is de novo. *Lopez v. People*, 113 P.3d 713, 720 (Colo.2005).

Vehicular homicide is a class four felony, *see* § 18–3–106(1)(a), (c), C.R.S.2005, which carries a presumptive range sentence of two to six years. Section 18–1.3–401(1)(a)(V)(A), C.R.S.2005. However, the court may impose a sentence of up to twice the maximum term authorized in the presumptive range if it finds extraordinary aggravating circumstances, *see* § 18–1.3–401(6), C.R.S.2005, or if "[a]t the time of the commission of the felony, the defendant was charged with or was on bond for a felony in a previous case and the defendant was convicted of any felony in the previous case." Section 18–1.3–401(9)(a), C.R.S.2005.

The trial court sentenced defendant to twelve years on the vehicular homicide count, or twice the maximum term authorized in the presumptive range. It based this sentence in part on its finding of extraordinary aggravating circumstances, including defendant's "reckless driving for thirty miles or more,

the dozens of people that [he] put in harm's way ... the harm to [other drivers involved in the accident], not to mention the death of [the victim]." The trial court also aggravated defendant's sentence because he was on bond for a felony at the time of commission of the instant offense and pleaded guilty to that felony before sentencing in this case.

### A. Conviction for On–Bond Offense

■ Defendant first asserts the trial court erred in enhancing his sentence pursuant to § 18–1.3–401(9)(a) because he had not yet been "convicted" of the felony for which he had pleaded guilty and was on bond when the trial court sentenced him here. In essence, he asserts that, because he had not yet been sentenced for the on-bond offense, no "conviction" had entered. We disagree.

Interpretation of statutes is a question of law that we review de novo. *Robles v. People*, 811 P.2d 804, 806 (Colo.1991); *People v. Terry*, 791 P.2d 374, 376 (Colo.1990).

■ A court's responsibility in interpreting a statute is to ascertain and give effect to the intent of the General Assembly. *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002); *Martin v. People*, 27 P.3d 846, 851 (Colo.2001). If the language of the statute is unambiguous and does not conflict with other provisions, its plain meaning must be given effect. But if the language is ambiguous or in conflict with other provisions, the court may look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to discern its meaning. *People v. Luther, supra; Martin v. People, supra*. If possible, the statute should be interpreted so as to give consistent, harmonious, and logical effect to all its parts. *People v. Cooper*, 27 P.3d 348, 354 (Colo.2001); *People v. Dist. Court*, 713 P.2d 918, 921 (Colo.1986). But the statute should not be interpreted so as to produce an absurd result. *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996).

The supreme court has not defined the term "convicted" in § 18–1.3–401(9)(a). *See People v. Chavez*, 764 P.2d 356, 357 n. 2 (Colo.1988)("We express no opinion as to the correctness of this interpretation [whether a guilty plea constitutes a conviction for purposes of § 18–1.3–401(9)(a) ], noting that the

word 'conviction' has been variously construed by this court."); *see also People v. Roberts*, 865 P.2d 938, 940 (Colo.App. 1993)("The meaning of 'conviction' may vary depending upon the statute in which it is used and the issue in the particular case.").

Defendant cites Crim. P. 32(c) in support of his contention that a conviction necessarily includes the imposition of a sentence. Crim. P. 32(c) states, "A judgment of conviction shall consist of a recital of the plea, the verdict or findings, the sentence, the finding of the amount of presentence confinement, and costs, if any are assessed against the defendant."

However, courts have distinguished between a "conviction" and a "judgment of conviction" when to do so would effectuate the General Assembly's intent in enacting a statute. *See People v. Roberts, supra*, 865 P.2d at 940.

In *Roberts*, the defendant pleaded guilty to possession of a controlled substance and was ordered to participate in a drug treatment program. The court also ordered her to surrender her driver's license and pay a victim compensation fee. The defendant appealed the additional conditions, asserting that the statutes authorizing the conditions required that they be imposed upon a "conviction." A division of this court rejected the defendant's narrow interpretation, reasoning that the term "conviction" has a less formal and technical meaning than the definition contained in Crim. P. 32(c). *People v. Roberts, supra*, 865 P.2d at 940 (citing *People v. Allaire*, 843 P.2d 38, 40 (Colo.App.1992)). "In its general and popular sense, and frequently in its ordinary legal sense, the term 'conviction' means the establishment of guilt by a verdict or plea independent of a judgment and sentence." *People v. Roberts, supra*, 865 P.2d at 940 (citing *State v. Hanna*, 179 N.W.2d 503 (Iowa 1970)).

In a related context, a court's acceptance of a guilty plea under a deferred sentencing statute constitutes a conviction for purposes of the Double Jeopardy Clause, even though formal entry of judgment and sentencing have yet to occur. *See Jeffrey v. Dist. Court*, 626 P.2d 631, 635 n. 4 (Colo.1981).

Similarly, a court's acceptance of a guilty plea and granting of a deferred sentence constitutes a conviction for purposes of the bail bond statute. *Hafelfinger v. Dist. Court,* 674 P.2d 375, 378 (Colo.1984). In *Hafelfinger,* the supreme court distinguished a guilty plea from a mere admission or extrajudicial confession, in terms of its purpose and effect: "Like a verdict of a jury, [a guilty plea] is conclusive.... [T]he court has nothing to do but give judgment and sentence." *Hafelfinger v. Dist. Court, supra,* 674 P.2d at 377 (quoting *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 113, 103 S.Ct. 986, 992, 74 L.Ed.2d 845 (1983)).

Looking to the other subparts of § 18–1.3–401(9), we note that § 18–1.3–401(9)(b), C.R.S.2005, authorizes an aggravated sentence if "[a]t the time of the commission of the felony, the defendant was on bond for having pled guilty to a lesser offense when the original offense charged was a felony." It would lead to an absurd result if a defendant who pleaded guilty to a misdemeanor was exposed to an aggravated sentence, but a defendant who pleaded guilty to a felony was not.

Finally, we note that the General Assembly's intent in enacting enhanced sentencing statutes is to punish more severely defendants who have shown a propensity toward repeated criminal acts. *People v. Anderson,* 784 P.2d 802, 804–05 (Colo.App.1989).

Thus, what is critical for purposes of § 18–1.3–401(9)(a) is the fact of the defendant's guilt of a prior felony. As in the contexts of deferred sentencing, the Double Jeopardy Clause, and the bail bond statute, the punishment received for the prior criminal act is irrelevant. We therefore conclude that a guilty plea constitutes a conviction within the meaning of § 18–1.3–401(9)(a).

Here, at defendant's sentencing, the fact of his guilt of a prior felony had already been determined by his guilty plea. Accordingly, he had been "convicted" within the meaning of § 18–1.3–401(9)(a).

## B. Prior Conviction

Defendant nevertheless contends that his conviction for the on-bond offense is a subsequent conviction, not a prior one. We disagree. The "conviction" for the previous on-bond offense, as we have interpreted that term, occurred before defendant was sentenced in this case. Hence, it is truly a "prior" conviction.

## C. Sixth Amendment and Due Process Requirements

The next issue is whether the aggravated range sentence the court imposed passes constitutional muster under the Sixth Amendment and due process requirements. We conclude that it does.

The United States Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). The Court reiterated this holding in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and clarified that the "statutory maximum" is the maximum sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington, supra,* 542 U.S. at 303, 124 S.Ct. at 2537.

Recently, the Colorado Supreme Court applied the rule of *Apprendi* and *Blakely* to § 18–1.3–401(6). *See Lopez v. People, supra.* There, the court identified four factors that may be constitutionally applied in aggravated sentencing under § 18–1.3–401(6): (1) facts admitted by the defendant; (2) facts found by a jury, as reflected in its verdict; (3) facts found by a judge when the defendant has stipulated to judicial fact finding for sentencing purposes; and (4) the fact of a prior conviction. The first three factors are considered "*Blakely*-compliant," while the prior conviction is considered "*Blakely*-exempt." *Lopez v. People, supra,* 113 P.3d at 723 (citing *State v. Aleman,* 210 Ariz. 232, 109 P.3d 571, 580 (Ct.App.2005)).

Here, defendant was convicted of the on-bond offense before sentencing. Thus, he is not entitled to relief under *Blakely* because his prior conviction is "*Blakely*-exempt." Defense counsel told the court at the sentencing hearing that defendant had already

pleaded guilty to the on-bond offense. And although the representations regarding defendant's prior conviction were made by defense counsel and not by defendant himself, defendant did not dispute the correctness of the statements at the time they were made. *See People v. Fogle*, 116 P.3d 1227 (Colo.App.2004)(because defendant did not dispute counsel's statements admitting that he was on probation when he committed the instant offense, counsel's admissions were properly treated as the defendant's own).

Defendant nevertheless contends that *People v. Fogle, supra*, is distinguishable because, in that case, the defendant pleaded guilty and received a lengthy advisement regarding his constitutional rights, including his right to a jury trial, and here, defendant received no such advisement. He also contends that he did not waive his constitutional right to a jury finding on aggravating factors.

 We reject these assertions. Defendant has no constitutional right to a jury trial to determine whether he has a prior conviction. Instead, that is an inquiry and finding that the trial judge is entitled to make. *See Blakely v. Washington, supra; Lopez v. People, supra*.

It is true, as defendant asserts, that the trial court relied at sentencing upon his status as being on bond for a previous felony. However, the trial court also relied upon his previous conviction for that offense, and the latter reliance alone is sufficient for the aggravated sentence to pass constitutional muster. *See Lopez v. People, supra* (one *Blakely*-exempt factor is sufficient to support an aggravated sentence, even if the sentencing court also considered factors that were not *Blakely*-compliant or *Blakely*-exempt). Hence, even if we assume, without deciding, that the judicial finding that defendant was on bond runs afoul of *Blakely*, that assumption does not invalidate defendant's sentence.

Accordingly, defendant's enhanced sentence does not violate the Sixth Amendment or offend due process principles. *See Lopez v. People, supra*.

### D. Other Aggravating Factors

 In light of the disposition above, we need not consider whether "reckless driving for thirty miles or more" or "the harm to [other drivers involved in the accident]" were proper aggravating circumstances in this case. *See People v. Leske*, 957 P.2d 1030, 1043 (Colo.1998); *People v. Broga*, 750 P.2d 59, 62 (Colo.1988)("Where the sentencing court finds several factors justifying a sentence in the aggravated range, only one of those factors need be legitimate to support the sentencing court's decision."). A defendant's constitutional rights are satisfied so long as there is one valid factor to support an aggravated range sentence. *See Lopez v. People, supra*, 113 P.3d at 731.

In light of this analysis, we need not address defendant's remaining contentions.

The judgment and sentence are affirmed.

TAUBMAN and HAWTHORNE, JJ., concur.