The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Justin TUCKER, Defendant–Appellant.

No. 06CA2580.

Colorado Court of Appeals, Div. II.

Oct. 1, 2009.

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Nathaniel E. Deakins, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RICHMAN.

Defendant, Justin Tucker, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempt to influence a public servant, forgery of a government-issued document, impersonating a peace officer, criminal impersonation to gain a benefit, and theft under $100. We affirm.

## I. Background

During the summer of 2004, defendant, a first-year law student, was an intern for Peter Comar, the District Attorney for the 12th Judicial District of Colorado. In the spring and summer of 2004, defendant and his wife were parties to a domestic relations case pending in Montana, in which Montana District Court Judge Gregory Todd had entered a permanent restraining order against defendant and in favor of his wife. Defendant subsequently was charged with violating the order, and, in June 2004, he was criminally charged in Montana with stalking. Attorney Solomon Neuhardt was appointed to represent defendant in the criminal case. Although a different judge was assigned to the criminal case, Judge Todd conducted the initial advisement.

In August 2004, Neuhardt received a letter that purported to have been written and signed by Comar. The letter was printed on the letterhead of the Alamosa District Attorney. The salutation read "Dear Mr. Neuhardt" and the letter went on to state, in pertinent part:

> Mr. Tucker has requested that we forward to you the criminal charges we will be filing on Judge Todd. It is not our policy to do so, but I will be totally frank with you. I am very upset with the situation. Mr. Tucker's grandfather was on the 10th circuit court of appeals for many years and his brother-in-law is the attorney general of Colorado. I have promised Mr. Tucker and his family that if Mr. Tucker is affected adversely in any way[,] Judge Todd's career will end. A judge has a moral obligation to find out the facts. Judges are not there to rubber stamp whatever a woman says. If Todd had even been willing to look at the facts he would have known that Mrs. Tucker is an accom-

> plished liar. No judge in the state of Colorado or Arizona would have issued a restraining order in this case. . . . I personally think it is time to do the right thing and protect Mr. Tucker. . . . It is reprehensible that the State of Montana is willing to further this harassment. If Mr. Todd and the State of Montana want to ignore the totality of circumstances in this case[,] . . . we will act in kind. If they continue to do so we will use all the resources of the State of Colorado to protect him.

> The state of Colorado will also review every thing the [Montana prosecutor] does with a fine tooth comb. This may seem harsh to you but our office has dealt with [defendant's wife] quite frequently and am [sic] amazed any state would try to protect such a deviant.

> We are also prepared to charge [defendant's wife] criminally. We have also been in contact with the district attorney's office in Maricopa County Arizona. They are equally tired of [defendant's wife] and will be filing criminal perjury charges against her.

Neuhardt called Comar and asked him whether he had written the letter. Comar stated he had not written it. Concerned about Judge Todd's safety, Neuhardt called the judge's office to inform him of the letter's content. Neuhardt later faxed a copy of the letter to the judge. He mailed the original to Comar.

Defendant was subsequently charged in Colorado with the four offenses as set forth above, and, after the jury found defendant guilty on all counts, the trial court sentenced him to four years on probation. This appeal followed.

## II. Motion to Preclude Evidence

Before trial, defendant filed a motion to preclude the use of the letter at trial, as well as Neuhardt's testimony about the letter, asserting these communications were shielded by the attorney-client privilege. At the hearing on this motion, the parties stipulated that defendant had (1) drafted the letter and sent it to Neuhardt, and (2) attempted to

reproduce Comar's signature on the letter. Other than the stipulations and background facts set forth above, no evidence was adduced at the hearing.

The court denied defendant's motion, relying on the Colorado statutory definition of the attorney-client privilege, as codified by section 13–90–107(1)(b), C.R.S.2009, which states: "An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment...."

The trial court found that on its face, the letter in question does not "purport to be a communication from [defendant] to Mr. Neuhardt; it purports to be a communication from Mr. Comar to Mr. Neuhardt." Thus, the court concluded, it does not meet the threshold requirement of a privileged communication. On appeal, defendant contends that the trial court erred in denying his pretrial motion to exclude the letter and Neuhardt's testimony pursuant to the attorney-client privilege. We disagree.

The trial court also rejected defendant's argument that the letter should be excluded because Neuhardt violated the Montana Rules of Professional Conduct when he disclosed the letter. Because defendant does not reassert this argument on appeal, that issue has been abandoned, and we do not address it here. *See People v. Malloy,* 178 P.3d 1283, 1285 (Colo.App.2008).

### A. Standard of Review

■ In reviewing a trial court's ruling on a motion to exclude evidence, we defer to the court's factual findings if competent evidence in the record supports them, and we review the court's legal conclusions de novo. *People v. Bonilla–Barraza,* 209 P.3d 1090, 1094 (Colo.2009).

### B. Applicable Law

■ As the trial court correctly concluded, the common law attorney-client privilege is now codified in Colorado by section 13–90–107(1)(b). Although codified, the privilege originated in the common law, and much of the common law jurisprudence pertaining to

the privilege is retained. Thus, the privilege is established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations. *Losavio v. Dist. Court,* 188 Colo. 127, 132–33, 533 P.2d 32, 35 (1975); *People v. Trujillo,* 144 P.3d 539, 542 (Colo.2006). The purpose of the attorney-client privilege is to secure the orderly administration of justice by ensuring candid and open discussion between the client and the attorney without fear of disclosure. *Losavio,* 188 Colo. at 132, 533 P.2d at 34. Furthermore, the privilege "applies only 'to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential.'" *Wesp v. Everson,* 33 P.3d 191, 197 (Colo.2001) (quoting *Lanari v. People,* 827 P.2d 495, 499 (Colo.1992)); *see also D.A.S. v. People,* 863 P.2d 291, 295 (Colo. 1993) (noting that there must be circumstances indicating the intention of secrecy for a communication to be privileged); *People v. Tippett,* 733 P.2d 1183, 1192 (Colo.1987) (stating that communications must be "private or secret" to be privileged).

### C. Analysis

■ Here, we see no error in the trial court's finding that, on its face, the letter in question does not "purport to be a communication from [defendant] to Mr. Neuhardt; it purports to be a communication from Mr. Comar to Mr. Neuhardt." Thus, the court concluded, it does not meet the threshold requirement of a privileged communication. We agree with that conclusion. *See* § 13–90–107(1)(b); *Gordon v. Boyles,* 9 P.3d 1106, 1123 (Colo.2000) ("attorney-client privilege extends only to matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations"). Defendant cites no authority, and we have found none, holding that a fraudulent letter with a forged signature, but nonetheless sent to an attorney, is treated as an attorney-client communication for purposes of applying the privilege.

In addition, we note that even if a lawyer reading the letter realized that defendant drafted, signed, and sent the letter, nothing in the letter purports to seek legal advice, counsel, or direction from the lawyer. *See Losavio,* 188 Colo. at 132–33, 533 P.2d at 35; *Trujillo,* 144 P.3d at 542. Rather, the letter expresses the writer's intention to file criminal charges against the judge, to take unspecified action to end the judge's career, and, possibly, to file criminal charges against defendant's wife.

Moreover, the letter does not meet the confidentiality requirement of a privileged communication. To the extent the letter seeks to have a threat conveyed to Judge Todd, or to defendant's wife, the letter cannot be understood to be a communication made in circumstances giving rise to a reasonable expectation that the statements will remain confidential. Further, the letter indicates that the matters discussed therein had already been shared with other people, specifically, with Comar and other personnel at the district attorney's office in Maricopa County, Arizona. *See Tippett,* 733 P.2d at 1193 (communication was not confidential because its contents were known to third parties). In such circumstances, it was unreasonable for defendant to expect that the letter would be kept confidential. *See Wesp,* 33 P.3d at 197 (to be privileged, statements must be made under circumstances giving rise to a reasonable expectation that they will be treated as confidential). Even assuming defendant intended the letter as a "joke," as he later testified at trial, it was unreasonable for him to expect the recipient of the letter to have perceived it as such and kept it confidential.

■ Finally, even if the letter could be construed as a confidential client communication from defendant to his lawyer, it is not protected by the attorney-client privilege due to the crime-fraud exception.

In *A. v. District Court,* 191 Colo. 10, 22, 550 P.2d 315, 324 (1976), the court held that the attorney-client privilege must give way when the communication with the attorney is made for the purpose of aiding the commission of a future crime or of a present continuing crime. In *Caldwell v. District Court,* 644 P.2d 26, 31 (Colo.1982), the court held that "[a]lthough the exception to the attorney-client privilege created for future illegal activity was at one time limited to criminal activity, it is now well-settled that this exception is also applicable to advice or aid secured in the perpetration of a fraud." (Citation omitted.) Now referred to as the "crime-fraud" exception to the attorney-client privilege, this doctrine has been applied in Colorado and elsewhere to negate the application of the attorney-client privilege to communications with an attorney that seek to further criminal activity or perpetrate a fraud. *See Law Offices of Bernard D. Morley, P.C. v. MacFarlane,* 647 P.2d 1215, 1220 (Colo.1982) (under the "crime-fraud exception," communications between an attorney and client are not privileged if they are made for the purpose of aiding the commission of a future or present continuing crime); *People v. Board,* 656 P.2d 712, 714 (Colo.App.1982) (defendant's attorney allowed to testify against defendant because communication to attorney from defendant pertained to the commission of a crime); *Lahr v. State,* 731 N.E.2d 479, 483–84 (Ind.Ct.App.2000) (attorney permitted to testify as to two forged documents tendered by client with intent they be submitted as evidence in pending criminal case); *State v. Hansen,* 122 Wash.2d 712, 862 P.2d 117, 121–22 (1993) (defendant's statement to his attorney that he was going to get a gun and shoot the judge, prosecutor, and public defender falls under the crime-fraud exception to the attorney-client privilege).

■ Despite defendant's argument to the contrary, the parties' stipulated facts do not establish the attorney-client privilege, nor do they undermine application of the crime-fraud exception. *See Morley,* 647 P.2d at 1221–22 (party asserting crime-fraud exception has burden of establishing foundation in fact for assertion of ongoing or future criminal conduct). A prima facie showing that the crime-fraud exception applies removes the protection of the attorney-client privilege. *Board,* 656 P.2d at 714. This burden is met by showing facts "adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to invoke the

crime or fraud exception to the attorney-client privilege has occurred." *Caldwell*, 644 P.2d at 33.

While the crime-fraud exception is not yet so refined by Colorado law, other courts have held that it is not enough to show only that the communication is "relevant" evidence of a crime. *See In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir.1995). Rather, the party seeking to invoke the crime-fraud exception must at least demonstrate probable cause to believe that a crime or fraud has been attempted or committed and that the communication was in furtherance thereof. *Id.*

Evidence that defendant forged Comar's signature, thereby impersonating a peace officer, and criminally impersonated Comar to gain a benefit by deceitfully attempting to influence the judge, demonstrate probable cause to believe that defendant was attempting or committing a crime or fraud and that the letter was in furtherance of those crimes.

Thus, because the letter was not a privileged communication, or was admissible pursuant to the crime-fraud exception, the trial court did not err in denying the pretrial motion to suppress it or in permitting the prosecution to introduce it and Neuhardt to testify about it at trial.

### III. Sufficiency of the Evidence

Defendant contends that the evidence presented at trial was insufficient to support the jury's verdicts. We disagree.

Neuhardt testified at defendant's trial, and the letter was introduced through his testimony. Defendant testified that he sent the letter over Comar's signature to Neuhardt as part of a package containing other documents, together with a handwritten cover letter in which he referenced the Comar letter and stated, "[H]ave a good laugh." Neuhardt testified repeatedly that he did not receive such a cover letter. No cover letter or handwritten note was introduced into evidence.

At trial, the jury was instructed on defendant's theory of defense as follows:

It is the theory of the defense that Mr. Tucker sent the letter to his Montana lawyer as a joke, that he never authorized Mr. Neuhardt to disclose the letter, that he believed the letter would be kept confidential by his lawyer, that he never expected or intended Mr. Neuhardt to use the letter and[,] therefore, he did not have the required culpable mental state for any of the charges in this case.

As noted, the jury convicted defendant on all counts.

### A. Standard of Review

We review a challenge to the sufficiency of the evidence de novo. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005). In doing so, we must determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable fact finder that the defendant is guilty beyond a reasonable doubt of the crimes charged. *Roberts v. People*, 203 P.3d 513, 518 (Colo.2009); *People v. Baker*, 178 P.3d 1225, 1233 (Colo.App.2007).

Determinations of witness credibility as well as the weight given to the evidence lie with the fact finder. The fact finder must resolve any issues of inconsistent evidence. An appellate court cannot sit as a thirteenth juror and set aside a verdict simply because it could have reached a different conclusion. *People v. McIntier*, 134 P.3d 467, 471–72 (Colo.App.2005). Where "reasonable minds could differ, the evidence is sufficient to sustain a conviction." *People v. Rector*, 226 P.3d 1170, 1176 (Colo.App. 2009).

### B. Attempt to Influence a Public Servant

A person commits the crime of attempting to influence a public servant when he or she "attempts to influence any public servant by means of deceit or by threat ... with the intent thereby to alter or affect the public servant's decision ... or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member." § 18–8–306, C.R.S. 2009.

A person commits criminal attempt if, while acting with the kind of culpability otherwise required for the commission of a par-

ticular crime, he or she engages in conduct constituting a substantial step toward the commission of that crime. § 18–2–101(1), C.R.S.2009; *People v. Lehnert,* 163 P.3d 1111, 1113 (Colo.2007). "Substantial step" is defined as "any conduct . . . which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." § 18–2–101(1).

■ Intent is the state of mind that exists at the time a person commits an offense, and it need not be proved by direct substantive evidence. *Garcia v. People,* 172 Colo. 329, 331, 473 P.2d 169, 170 (1970). Rather, the mind of an alleged offender may be inferred from his or her conduct and the reasonable inferences that may be drawn from the circumstances of the case. *Id.; accord People v. Madison,* 176 P.3d 793, 798 (Colo.App. 2007).

■ Defendant contends that, because the letter was not mailed "directly to Judge Todd," and does not contain "explicit instructions to disclose it to Judge Todd," it was insufficient to establish the intent element of this crime. We are not persuaded.

We conclude that defendant's intent to alter or affect the outcome of his criminal case in Montana may reasonably be inferred from the contents of the letter and the evidence at trial. Through deceitful means, the defendant threatens specifically to have the State of Colorado (1) file criminal charges against Judge Todd, (2) use alleged family connections to end Judge Todd's career, (3) "use all the resources of the State of Colorado to protect" defendant from "the State of Montana," (4) review everything the Montana prosecutor "does with a fine tooth comb," (5) file criminal charges against defendant's wife, and (6) have the State of Arizona file "criminal perjury charges against" defendant's wife. *See People v. Janousek,* 871 P.2d 1189, 1194–95 (Colo.1994) (defendant's letter to judge satisfied the elements of attempting to influence a public servant, where it (1) focused on defendant's frustration with the court system and his feeling that he was unjustly treated, (2) contained numerous expressions of violent thought and contemplated action, including both implicit and explicit threats of harm to the judge, and (3) evinced a threatening tone).

■ We also reject defendant's contention that the letter does not constitute an "attempt" to influence because a "substantial step" was not taken until the letter was actually disclosed to Judge Todd. A reasonable juror could have found that defendant intended that Neuhardt influence the judge by means of the threats and that the mere act of writing this letter and sending it to Neuhardt, an attorney with access to the judge, was strongly corroborative of defendant's intent to influence the judge. *See* § 18–2–101(1); *People v. Taylor,* 159 P.3d 730, 734 (Colo.App.2006) (rejecting suggestion that to convict defendant of attempting to influence a public servant the prosecution had to prove defendant actually mailed the forged documents to the public servant or that defendant explicitly directed someone else to mail them).

## C. Forgery

A person commits forgery of a government-issued document if, with the intent to defraud, he or she falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed, a written instrument officially issued or created by a public servant. § 18–5–102(1)(e), C.R.S. 2009.

A "written instrument" is "any paper, document, or other instrument containing written or printed matter or the equivalent thereof, used for purposes of reciting, embodying, conveying, or recording information . . . *which is capable of being used to the advantage or disadvantage of some person.*" § 18–5–101(9), C.R.S.2009 (emphasis added).

To "falsely make" a written instrument means to "make or draw a written instrument, whether complete or incomplete, *which purports to be an authentic creation of its ostensible maker,* but which is not, either because the ostensible maker is fictitious or because, *if real, he did not authorize the making or the drawing thereof.*" § 18–5–101(4), C.R.S.2009 (emphasis added).

■ Again, we reject defendant's contention that because the letter was not mailed directly to Judge Todd it was insufficient to establish an "intent to defraud." Defendant's intent is amply evidenced by the forging of Comar's signature, in particular defendant's attempt to make the signature duplicate the indecipherable signature known by defendant to be that of Comar. *See People v. Gray*, 710 P.2d 1149, 1152 (Colo.App.1985) ("[W]here any material portion of an instrument is fictitious, such as a name or signature, a forgery conviction may be sustained."); *see also People v. Brown*, 193 Colo. 120, 122, 562 P.2d 754, 755 (1977) (when a defendant passes an instrument he or she knows to be false, the fact finder may infer an intent to defraud).

■ We also reject defendant's contention that the evidence was insufficient to establish that he "falsely made a written instrument." Neuhardt's testimony that he did not know before he spoke with Comar that the district attorney had not written the letter, as well as the fact that the letter was on Comar's letterhead and included Comar's forged signature, contradicts defendant's arguments that the letter (1) could not have been used to his advantage because "it would be obvious to any practicing attorney that [the letter] was not written by a district attorney," and (2) does not purport to be an authentic creation of its ostensible maker.

### D. Impersonating a Peace Officer

■ "A person who falsely pretends to be a peace officer and performs an act in that pretended capacity commits impersonating a peace officer." § 18–8–112(1), C.R.S.2009. Pursuant to section 16–2.5–132, C.R.S.2009, a district attorney is a peace officer.

Again, based on Neuhardt's testimony that he was not certain at first whether the letter was "real," we reject defendant's contention that because it was obvious the letter was from him and not Comar, the evidence was insufficient to establish that he (1) pretended to be a peace officer, and (2) performed an act in that capacity.

### E. Criminal Impersonation to Gain a Benefit

A person commits criminal impersonation if he or she "knowingly assumes a false or fictitious identity or capacity, and in such identity or capacity ... [d]oes any ... act with intent to unlawfully gain a benefit for himself ... or to injure or defraud another." § 18–5–113(1)(e), C.R.S.2009.

■ Relying again on his previous arguments, defendant contends that, because the letter does not ask Neuhardt to disclose its contents and speaks only to Neuhardt, it is insufficient to establish that defendant (1) knowingly assumed a false identity, or (2) did any act with the intent to unlawfully gain a benefit for himself or to defraud another. For the same reasons we rejected defendant's previous arguments, we reject these as well.

In sum, we conclude that the evidence, when viewed in the light most favorable to the prosecution, was sufficient for a reasonable juror to infer the elements of each offense and that it was, therefore, sufficient to support the jury's verdicts.

### IV. Preclusion of Expert Testimony

Defendant contends that the trial court abused its discretion in granting the prosecution's motion in limine to preclude him from presenting an expert witness's testimony that Neuhardt violated the Montana Rules of Professional Conduct governing attorney-client confidentiality by disclosing the letter without defendant's permission. Specifically, defendant challenges the trial court's conclusion that the expert's testimony was neither relevant nor proper res gestae evidence. We perceive no abuse of discretion.

■ A trial court has broad discretion to determine the admissibility of expert testimony, and its decision will not be overturned unless it is manifestly erroneous. *Golob v. People*, 180 P.3d 1006, 1011 (Colo.2008).

### A. Relevance

To be admissible, evidence must be relevant. CRE 402; *People v. Greenlee*, 200 P.3d 363, 366 (Colo.2009); *People v. French*,

141 P.3d 856, 860 (Colo.App.2005), *vacated and remanded,* 165 P.3d 836 (Colo.App.2007). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

■ Here, at a pretrial hearing on the prosecutor's motion to exclude the expert's testimony, defense counsel argued that the testimony was admissible because it was relevant to negate the criminal intent element of the charged offenses. More specifically, counsel argued that the testimony might show that defendant had a reasonable expectation that the letter would not be disclosed without his permission, thereby negating his "culpable mental state." The trial court, however, questioned how such testimony could be relevant "without some information or evidence concerning [defendant's] understanding of what his lawyer's duties" were. Defense counsel did not state that defendant would so testify, explaining that the opinion was relevant because

> what [Neuhardt] will testify to is that he knew [defendant] was a law student and knew more than the layperson. So I will then be able to present, perhaps without calling [defendant], inferentially, that certainly a law student has a better understanding of what an attorney-client relationship should be and how communications should be handled as opposed to a normal layperson.

Nevertheless, we agree with the trial court's conclusion:

> Whether Mr. Neuhardt should or should not have disclosed the defendant's letter does not make it more or less probable that the defendant committed the acts or that he had the required mental state.... Evidence that Mr. Neuhardt violated the Montana [R]ules of [P]rofessional [C]onduct, however, is not relevant to prove what the defendant expected his lawyer would do with the letter.... Evidence concerning the Montana [R]ules of [P]rofessional [C]onduct and their requirement that attorneys maintain client confidences is irrelevant *unless the defense first puts forward evidence that the defendant was*

*familiar with the rules of professional conduct and relied upon them in sending the letter to Mr. Neuhardt.* The fact that the defendant is a Colorado law student is not sufficient to provide a foundation that he would have knowledge of the Montana code of professional conduct or even the Colorado code of professional conduct.... Thus, evidence that Mr. Neuhardt may have violated the Montana [R]ules of [P]rofessional [C]onduct is simply irrelevant to prove any fact of consequence in this case. *Evidence of the client confidentiality requirements of the Montana code of professional conduct is irrelevant without a foundation that the defendant was aware of those requirements and relied upon them in sending the letter.*

(Emphasis added.) *See also People v. Simmons,* 182 Colo. 350, 354–55, 513 P.2d 193, 195–96 (1973) (in vehicular homicide case, trial court properly excluded attorney's testimony for the defense about the victims' pending lawsuit alleging police officers were negligent in pursuing the defendant; testimony was irrelevant to impeach officers' credibility absent an offer of proof that the officers had actual knowledge of the pending lawsuit).

At trial, defendant testified that he expected his lawyer would not give the letter to anybody else or disclose it, claiming, "It's common sense." The defense made no further effort to present the expert opinion.

■ Expert testimony is admissible when it is useful to the jury. *People v. Shreck,* 22 P.3d 68, 79 (Colo.2001). Usefulness to the jury depends on whether the proffered expert testimony is "relevant to the particular case: whether it 'fits.' Fit demands more than simple relevance; it requires that there be a logical relation between the proffered testimony and the factual issues involved in the litigation." *People v. Martinez,* 74 P.3d 316, 323 (Colo.2003). The admissibility must be evaluated in light of its offered purpose. *Id.*

Here, the purpose of offering the proposed expert testimony to support defendant's assertion of lack of intent to influence a public servant or to defraud does not "fit" absent

evidence of defendant's knowledge of or reliance upon the Montana Rules of Professional Conduct. At the time of the pretrial hearing, defendant did not tender evidence of his knowledge and reliance, nor did he advise the court as to whether such evidence would be offered as a foundation at trial. Therefore the proposed expert opinion did not "fit" and was properly excluded by the pretrial ruling.

When defendant later testified at trial as to his expectation that the attorney would not disclose the letter, he did not state that such expectation was based on the Montana Rules of Professional Conduct or any other ethical rule, but simply relied on his "common sense." Moreover, no further effort was made by defendant to proffer the expert testimony. In closing, defendant's counsel argued that Neuhardt had an obligation not to disclose the letter and that defendant believed the letter was confidential. Under such circumstances, there was no error in the exclusion of the proposed expert opinion and no prejudice to defendant.

### B. Res Gestae

Given our conclusion that the expert's testimony was not relevant under CRE 401, we necessarily reject defendant's argument that it was admissible as res gestae evidence. *See People v. Skufca,* 176 P.3d 83, 86 (Colo. 2008) ("[t]o be admissible, res gestae evidence must also be relevant under CRE 401"); *see also People v. Ramirez,* 155 P.3d 371, 378 (Colo.2007) (to be admissible under CRE 702, expert testimony must be both relevant and reliable).

The judgment is affirmed.

Judge CARPARELLI and Judge MÁRQUEZ * concur.

