22CA1806 Peo v Young 09-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1806
Gilpin County District Court No. 22CR20
Honorable Todd L. Vriesman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Arthur Robert Young,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 12, 2024

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

The Law Office of Sean C. Thomson, LLC, Sean C. Thomson, Denver, Colorado,
for Defendant-Appellant

¶ 1    Defendant, Arthur Robert Young, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree burglary.  We affirm.

## I.    Background

¶ 2    The People charged Young with second degree burglary, theft, and criminal mischief based on allegations that he, and at least two others, broke into the victim's home, stole items, ransacked the house, and used her garage as a chop shop.  After the preliminary hearing, which was continued outside of the thirty-five-day statutory deadline over Young's objection, the county court dismissed the theft and criminal mischief charges for lack of probable cause, binding over to district court only the second degree burglary charge.

¶ 3    At the jury trial, the prosecution presented evidence that, one morning in February, the victim's neighbors were walking by her summer home when they noticed that people were loading household items into a white SUV and trailer.  The neighbors continued their walk and fifteen to twenty minutes later they saw the same SUV and noticed that the people were wearing "gaiter style masks" and there was a tarp over the trailer.  When the neighbors

1

got home, they called the victim, who contacted her friend (and caretaker of her home) to check on the house.

¶ 4     The victim's friend had last been at her home two days earlier — he had plowed the driveway and had been inside the home with a painter.  At that time, nothing looked out of place; however, when the victim's friend went to check on the home after the call, he noticed that there were many tire tracks in the driveway and the house was "a wreck."  Inside, there were greasy footprints on the carpet, the furniture had been rearranged, and things were "out of order."  In the garage, the victim's friend saw a large hole in the ceiling, the victim's Honda was missing, and there was a bucket of transmission fluid, a large oil stain, and cigarette butts on the floor.  The victim's friend called the police, and when the victim arrived at her home, she noticed that many household items, including food and furniture, were missing as well.

¶ 5     The investigating officer collected evidence, including three cigarette butts found in the garage.  And based on the hole in the ceiling, tarps covering the windows, chains on the floor, and the vehicle fluids he observed, the investigator believed the victim's

garage had been used as a "chop shop" where the burglars disassembled vehicles.

¶ 6     A day earlier, police found a Subaru, which had been reported as stolen, in a ditch about a mile away from the victim's house. The Subaru was missing an engine and contained cigarettes that the investigator testified were consistent with the cigarettes found in the victim's garage.

¶ 7     As part of a neighborhood canvas, police obtained a surveillance video of the SUV and trailer leaving the victim's home. Based on this surveillance and a partial license plate number the neighbors provided, police were able to locate the SUV. They also located the victim's stolen Honda, which was being driven by the codefendant.

¶ 8     The codefendant, who had already been convicted of the burglary and was then serving his sentence, testified that he did not break or enter. Rather, he was brought to the home and was hanging out and doing drugs with a man named Kevin. He remembered smoking cigarettes and being given a car — the victim's Honda that he was later arrested in. When asked if Young was in the house with him, he said he could not remember,

3

explaining that it had "been over a year and a half," he had "had numerous amounts of seizures," and he was using drugs at that time.

¶ 9 The three cigarette butts collected from the garage were submitted for DNA testing. A forensic DNA analyst opined as an expert at trial that one of the cigarette butts contained a single source DNA profile matching the codefendant, and the other two cigarette butts each contained a single source DNA profile matching Young. The analyst testified that none of the DNA found on the cigarettes could have been contributed by the victim.

¶ 10 Young testified and denied ever being in the victim's home or in the vicinity around the time of the burglary. He denied being involved in the burglary and while he admitted to being a smoker, he had "no clue" how the cigarette butts with his DNA ended up in the victim's garage.

¶ 11 A jury convicted Young of second degree burglary, and the district court sentenced him to four years in prison.

## II. Sufficiency of the Evidence

¶ 12 Young first contends that the district court erred by not granting his motion for judgment of acquittal because the admitted

DNA evidence was insufficient to establish identity or that he acted with the requisite intent.  We are not persuaded.

### A.     Standard of Review

¶ 13     We review de novo a district court's denial of a motion for judgment of acquittal based on insufficiency of the evidence. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).

¶ 14     In our review, we consider whether the evidence, direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support the defendant's guilt beyond a reasonable doubt.  *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010).  We give the prosecution the benefit of every reasonable inference that can fairly be drawn from the evidence, so long as such inferences are supported by a convincing logical connection between the facts established and the conclusion inferred.  *People v. Perez*, 2016 CO 12, ¶ 25.  If the record contains evidence upon which the fact finder could reasonably infer an element is satisfied, or if reasonable minds could differ, the evidence is sufficient.  *See People v. Grant*, 174 P.3d 798, 812 (Colo. App. 2007).

## B.  Analysis

¶ 15    A burglary conviction requires the prosecution to prove beyond a reasonable doubt that a person knowingly broke an entrance into, entered unlawfully in, or remained unlawfully after a lawful or unlawful entry in, a building or occupied structure, with the intent to commit therein the crimes of theft and or criminal mischief against another person or property.  *See* § 18-4-203(1), C.R.S. 2024.  Theft means the person knowingly obtained, retained, or exercised control over anything of value, in such a manner as to deprive the other person permanently of its use or benefit.  *See* § 18-4-401(1)(b), C.R.S. 2024.  And criminal mischief means that the person knowingly damaged the real or personal property of one or more persons in the course of a single criminal episode.  *See* § 18-4-501(1), C.R.S. 2024.

¶ 16    The parties do not dispute the trial evidence showing that multiple people entered the victim's home without her permission, ransacked the home, stole her property, and used the garage as a chop shop.  Rather, the dispute concerns whether Young was one of those individuals.

6

¶ 17    We conclude that sufficient evidence established Young's identity. Young's DNA was found on two of the cigarette butts found inside the victim's garage, a place they were extremely unlikely to be if Young was not one of the burglars because the victim did not know Young, and he had not previously been at her home. *Cf. Clark*, 232 P.3d at 1292-94 (DNA evidence supported conviction where it was found on a sweatshirt inside the victim's home); *People v. Harland*, 251 P.3d 515, 518 (Colo. App. 2010) (DNA evidence supported conviction where it was found inside victim's home and victim did not know defendant and he had never been inside her home). Indeed, there is no reasonable explanation for the presence of Young's DNA in the places it was found other than it was deposited during the commission of the burglary. Moreover, the codefendant's DNA was found on the third cigarette butt — the same codefendant who admitted to participating in the burglary and was found in possession of the victim's car, which was taken from her garage.

¶ 18    Young argues that the evidence was nevertheless insufficient to show that he participated in the burglary because the "only thing that tied [him] to this case was a DNA match" and under the

7

sufficiency of the evidence test articulated in *People v. Clark*, 214 P.3d 531 (Colo. App. 2009), *aff'd on other grounds*, 232 P.3d 1287, DNA evidence must be corroborated by other evidence that the defendant was the perpetrator to support the conviction. But, as the People note, the supreme court's decision in *Clark* explicitly rejects the requirement that "to be legally sufficient to sustain a conviction, [DNA evidence] must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the DNA was deposited at a time other than that of the crime." *Clark*, 232 P.3d at 1292-93. Because we are bound by decisions of the supreme court, we follow its mandate here. *See People v. Wise*, 2014 COA 83, ¶ 8.

¶ 19      Therefore, when viewed as a whole and in the light most favorable to the prosecution, we conclude the evidence and the reasonable inferences from it are sufficient to support a conclusion by a reasonable person that Young was a participant in the burglary of the victim's home.

¶ 20      Alternatively, Young contends that even if the evidence is sufficient to establish that he was physically present in the victim's home, it is insufficient to establish that he participated in the

burglary. Circumstances such as "the location of the DNA, the character of the place or premises where it was found, [and] the accessibility of that place or premises to the general public" are all fact questions the jury may assess. *Clark*, 232 P.3d at 1293. And based on the evidence presented, the jury could have reasonably concluded that the burglary occurred in the two days between when the victim's friend was last at the house and when her neighbors noticed the SUV leaving with household items and called the police. Also, that is the timeframe for when the cigarette butts were left in the garage.

¶ 21 Moreover, because the jury was instructed on the theory of complicity, the prosecution did not have to prove that Young committed the burglary as a principal. *See* § 18-1-603, C.R.S. 2024 ("A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense."). Rather, because the DNA evidence placed Young in the garage during the same period of time when the burglary occurred, and based on the evidence presented, the jury could have

reasonably concluded that he participated in the burglary as a principal or a complicitor. *See People v. Fisher*, 904 P.2d 1326, 1330-31 (Colo. App. 1994) ("Under a complicity theory, although all of the elements of a crime must have been committed, it is not necessary that any single person have done so. It is only necessary that the acts of the complicitor and the other actor or actors, together, constitute all acts necessary to complete the offense.").

¶ 22    We likewise reject Young's contention that the evidence was insufficient to establish that he had the requisite intent to commit criminal mischief or theft. Intent is a state of mind existing at the time a person commits an offense, and it need not be proved by direct substantive evidence. *People v. Tucker*, 232 P.3d 194, 201 (Colo. App. 2009). Rather, an offender's state of mind may be inferred from their conduct and the reasonable inferences that may be drawn from the circumstances of the case. *Id.* The evidence showed that at least three individuals entered the victim's home without permission over the course of two days and, once inside, ransacked the home, stole the victim's property, and used the victim's garage as a chop shop. Because the evidence overwhelming established that the burglars stole items and damaged property, the

10

jury could reasonably infer that they all had the intent to commit theft or criminal mischief. *See People v. Chase*, 2013 COA 27, ¶ 50 ("If there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element.").

¶ 23 Accordingly, we conclude that the evidence was substantial and sufficient to prove that Young committed the crime of second degree burglary, and the district court properly denied the motion for judgment of acquittal.

### III. Preliminary Hearing

¶ 24 Next, we address Young's contention that the district court reversibly erred when it found good cause to continue his preliminary hearing beyond thirty-five days.

¶ 25 Under section 16-5-301(1)(a), C.R.S. 2024, "[e]very person accused of a class 1, 2, or 3 felony . . . has the right to demand and receive a preliminary hearing." *See also* Crim. P. 5(a)(4). The purpose of a preliminary hearing "is to screen out cases in which prosecution is unwarranted by allowing an impartial judge to determine whether there is probable cause to believe that the crime charged may have been committed by the defendant." *People v.*

11

*Nichelson*, 219 P.3d 1064, 1066-67 (Colo. 2009) (citation omitted). The preliminary hearing "shall be held within 35 days of the day of setting, unless good cause for continuing the hearing beyond that time is shown to the court." Crim. P. 5(a)(4)(I).

¶ 26 A defendant who seeks appellate review of a court's failure to hold a preliminary hearing according to the procedural rules must seek immediate review in the supreme court "because, if the defendant is convicted at trial, the alleged error in denying the preliminary hearing becomes moot." *People v. Gillis*, 2020 COA 68, ¶ 23. The proper procedure for seeking such review is a C.A.R. 21 petition to the Colorado Supreme Court. *Id.*; *see also* C.A.R. 21.

¶ 27 We decline to reach Young's claim that the court erred by finding good cause to hold his preliminary hearing beyond the thirty-five-day procedural deadline because the issue is moot. *Gillis*, ¶ 23. Young failed to pursue the only remedy available to him — a petition to the supreme court under C.A.R. 21 — before his case proceeded to trial. And because he was found guilty of second degree burglary at trial, his claim is moot. *People v. Morse*, 2023 COA 27, ¶ 68 ("[O]nce a defendant has been convicted at trial, any error in the denial of a preliminary hearing is moot because the

defendant has been proved guilty beyond a reasonable doubt."); *cf.*
*People v. Hacke*, 2023 CO 6 ("Once the trial has occurred, the right
to a preliminary hearing is as useful as a chocolate teapot.").

## IV. Denial of Mistrial

¶ 28    Finally, we address, and reject, Young's contention that the
district court abused its discretion when it denied his motion for a
mistrial after the prosecution elicited evidence of a "preliminary lab
result" with a "positive DNA match" on the abandoned Subaru
found near the victim's home a day before the burglary was
reported to police.

### A. Additional Background

¶ 29    As noted, a stolen Subaru was found abandoned in a ditch
about a mile from the victim's home. It was missing an engine and
law enforcement believed it was connected to the burglary. During
the prosecution's case-in-chief, one of the investigators testified that
the brand of cigarettes that were found in the Subaru were
consistent with the cigarette butts that were found in the victim's
garage. The investigator testified that the codefendant was arrested
inside the victim's car and the cigarette butts found in the victim's

13

home contained DNA matching the codefendant and Young.  After this testimony, the following exchange occurred:

> PROSECUTOR: Were you trying to identify any other individuals that may have been at the house with [Young] or [the codefendant]?
>
> INVESTIGATOR: Yes.
>
> PROSECUTOR: Okay.
>
> INVESTIGATOR: Since we knew we had at least three people involved.  And we had eyewitnesses.  And we have cameras showing there has to be at least two people because two cars are driving away.  And the registered — or sorry, the unregistered possessor of the white SUV that was identified, he became our third suspect.
>
> PROSECUTOR: And was his first name Kevin?
>
> INVESTIGATOR: Yes.
>
> PROSECUTOR: Okay.  And then turning back to that Subaru, did you receive information regarding a preliminary lab result in that case?
>
> INVESTIGATOR: As we — we had already been coordinating with Lakewood PD for the recovery of one of the vehicles and [the codefendant's] prosecution.  So I was already in touch with the detective back and forth.  And as I said, you know, we have, you know recovered, just the day before, one of your stolen cars.  So we're just playing these musical chairs with cars here.  And he sent me that report.  And it had a positive DNA match on it as well.

14

¶ 30    Following this exchange, defense counsel objected and requested a mistrial.  Outside of the presence of the jury, defense counsel explained the "positive DNA match" referred to touch DNA, purportedly belonging to Young, that was taken from the Subaru. Defense counsel argued that the DNA evidence was inadmissible because there was "no confirmation analysis done" and prejudicial because it "ties [Young] to this, you know, this chop shop operation."  The prosecutor acknowledged that there was not a confirmation report and that she had misread discovery. Nevertheless, she argued that "[n]one of that information was about whether it was [Young's] DNA, whether it was on the steering wheel" and the line of questioning was not improper because no DNA results were ever revealed to the jury.

¶ 31    The district court denied the motion for a mistrial.  The court found that there was no "intentional conduct."  And because there was other evidence that tied Young to the scene — namely, "DNA evidence on two cigarette[] butts that were found in or about the garage of the dwelling" — "the implied evidence from the testimony," "if it were truly an implication," was "not as important" and therefore, did not "prejudice [Young's] rights to a fair and impartial

15

trial." Additionally, the court noted that it offered to provide a curative jury instruction, but defense counsel declined because it would only "increase the prejudicial effect and nature of the occurrence, tying [Young] into something that [the jury] might have thought was so subtle that smart lawyers would realize, but maybe [the jury] didn't."

### B. Applicable Law and Standard of Review

¶ 32 A mistrial is "the most drastic of remedies." *People v. Owens*, 2024 CO 10, ¶ 125. It is warranted only when the prejudice to the defendant is too substantial to be remedied by other means. *Id.*

¶ 33 A district court has broad discretion to grant or deny a motion for a mistrial, and an appellate court will not disturb its decision absent a gross abuse of discretion and prejudice to the defendant. *Id.* A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People v. Van Meter*, 2018 COA 13, ¶ 9.

### C. Analysis

¶ 34 We discern no abuse of discretion in the district court's ruling for two reasons. First, we disagree with Young's contention that "the only reasonable inference" from the investigator's testimony is

16

that the "positive DNA match" was for Young. The investigator never testified that the DNA on the stolen Subaru matched Young and, considered in context, the challenged testimony was ambiguous and brief. *See People v. Lahr*, 2013 COA 57, ¶ 24 ("[W]e deem inadmissible evidence to have less prejudicial impact when the reference is 'fleeting.'") (citation omitted). Moreover, the questioning just prior referred to the third suspect, Kevin, and the jury may well have inferred that the positive DNA match was in reference to him.

¶ 35 Second, Young has failed to show any prejudice resulting from this testimony. As noted by the district court, Young was already tied to the scene based on evidence that his DNA was found on two cigarette butts in the victim's garage. *See People v. Williams*, 2012 COA 165, ¶ 23 (affirming denial of a request for mistrial where the "statement was not substantially prejudicial because it was cumulative of other admissible testimony"). Thus, we cannot say that the testimony was so prejudicial that, in its absence, the jury might have acquitted Young.

¶ 36 Accordingly, we conclude that the district court did not abuse its discretion when it denied Young's motion for a mistrial.

## V. Disposition

¶ 37    The judgment is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.